May it please the Court, my name is Richard Hamlisch. I represent the appellant, Theresa and Cheryl Stansberry. The briefing in this case was extensive, I think fairly complete, at least on our part, but there are two issues in this case which stand out. The first issue, of course, is the amended complaint, the failure to grant leave to file an amended complaint. Fulman is very clear on that issue and says the judge doesn't give a reason for denying the motion, it's an abuse of discretion. And if the Court will look at the excerpts from the record of page 135, it's a one-sentencer, it says, after review and consideration of the document submitted, the plaintiff's motion is denied. Not even an inkling. Now, the appellees wrote a 50 or 60 or 70 page brief, didn't even mention Fulman at all. Didn't try to They gave reasons why the judge denied the motion. And as I said in my brief, they must be clairvoyant. Let's assume everything you say is right. Here we are on appeal, and the question is, what should we do with the case? And we've been told by our brethren, colleagues, other people on the Court, that if it's a futile amendment, we don't have to honor your situation. All you wanted to do was add the two people who handcuffed. Oh no, no, no, oh no. Your Honor, there was the original complaint was drawn by another attorney. After he, after the answer was filed. You wanted to add a whole bunch of stuff. Well, we wanted to add causes of action which he had in the fact pattern, but had failed to state as a cause of action. And the judge had said, I'm not going to allow you to proceed with those causes of action because you didn't plead them. Plus the two people who actually handcuffed. Plus the two people. Now we look at what happened, and what difference would that make? It's two different cases. It's two different cases. Yeah, but what difference, not form, but substance, what difference would it make? In other words, you're asking us to send this whole thing back to start over again, is that right? Absolutely, Your Honor. Well, it doesn't appear that it's going to make any difference. Well, I think the testimony, the witnesses will be different. I didn't bring any witnesses. I was not allowed to bring witnesses in to support certain allegations because the judge said that is not before the court. But all of them were still predicated on the main facts of what occurred on the day when the Stansberry's were maced. Doesn't it all stem from those facts? You can't change those facts. The allegation that should have been made in this case is false arrest. That's a cause of action, but the facts don't change, right? Well, but the facts of this case do not apply to the cause of actions that were pleaded. I'm trying to think real quickly off the top of my head. If I'm in an automobile accident and I file a civil case for battery against the person, instead of for running into the rear of my car, the judge is going to throw it out. Well, that could be a battery. It could be a battery. Well, yes, it could be a battery. So the issue is what are the legal implications of the facts? Because the facts are not going to change. If we send this case back to the district court, the facts will still be the facts. And the issue will be whether or not those facts support the conspiracy that you wanted to plead, the false arrest, the false imprisonment, and the malicious prosecution. But none of the facts of the false arrest were ever placed before the court. Because the court wouldn't allow it because it was not before the court. What facts are there that were not articulated previously? The fact that Mr. Officer Mannery didn't have probable cause to arrest this person and had no facts to base that and he arrested them. We have facts describing what happened, which can be interpreted as cause for arrest. Interference with a police officer performing his duty. But Officer Mannery didn't know that. He wasn't even there. You're lucky you got as far as you did in this case. I read this entire record. You should have been clocked out at the beginning on a qualified immunity basis. I think the judge gave you far more leeway than the facts entitled you to. Well, that's another issue, the qualified immunity issue. There was no motion. There was no briefing. Never mentioned until the last day when the judge said, let's hear about it. Notice? Due process? I mean, I've been doing this for 25 years and I've never had a judge stand up and say, okay, I want to hear about qualified immunity. What have you got to say? He didn't rule on that basis, did he? He didn't rule on the basis of qualified immunity, did he? I'm sorry, I don't remember what he did about qualified immunity because he just dismissed the case, basically, is what he did. And that's another thing. The Rule 50 motion that came before the court specifically excluded the excessive force against Teresa Sandberg and the handcuffing in the police station. The judge said, no, no, no, I want to include it. We had no opportunity to brief it, no opportunity to even look at it. The judge said, I want to look at it. The defense got up and said, no, no, no, we don't want to talk about that. So under the qualified immunity, the court would find that qualified immunity would apply to both the defendants in this case, that qualified immunity would prevent this case from going further. Even if there were not qualified immunity, the evidence here in terms of the other case is woefully inadequate. If there's something less than woefully inadequate that may apply to this case, no offense. What the court says, no constitutional violation. I agree. I don't agree with the court, what the court said. I agree with what you just said. The court said there was nothing. And I disagree. So the court finds that even if this case did not go into qualified immunity, I'd probably have to take this away from the jury anyway. Because if the jury came back with a finding, the court would have to find that there was not sufficient evidence to support a finding in favor of any of these causes of action. That's what the court did. I understand that. I was standing here listening to it. And I was not, I wouldn't say flabbergasted, because I felt from the time they denied the motion to amend the complaint that we were going through the motions. The judge, just off the top of my head, the first case I've ever had where a judge wouldn't allow a treating physician to talk about the injuries to the person because that would be repetitive testimony. Well, one of your factual claims is that you were prevented from admitting an evidence internal affairs reports and other documents that would apparently show things in your favor. Is that right? Yes. Now, the first problem I had is I couldn't find those in the record. Are those in the record someplace, the internals affairs report and everything else? The judge wouldn't allow it. The court did not allow it. But did you make an offer of proof? Here we are in appeal. You want us to presume some prejudice from something. It's not in the record. There are a million, this is trial practice 101 to preserve your record. So you're telling us they're not in the record. We have no idea what's in them. You have no idea what's in them? And that's because you didn't put them in the record. I was not allowed to put them in the record. Sure you were. You could have made an offer of proof. I'd like to lodge these with the court so I can You did not protect the record. We have no idea what's in those. And no one else? You know, this is trial practice 101. If you've got something you want to do and a court won't let you do it, then you've got to indicate in the record precisely what it is so we can measure it on appeal. You didn't do that. Even if the judge won't admit it as evidence, you still, I taught trial practice for years and I, you know, I taught my students. If the judge won't let it in and the judge is getting mad at you, say, your honor, let, I am going to submit this to the clerk of the court to preserve the record. And then on appeal, you can pull it out and you can argue it. But we have no idea what you're talking about. At the pretrial conference, exactly what you just described happened. The judge said, don't bother. Well, if you want to preserve the record for appeal, you better bother. Well, I did. It wasn't, it's not there. There's a number of things that were submitted. Then how do we know it's, how do we know it was prejudicial or relevant or anything else? Well, I think that the best way I can describe it standing here today is the whole case was prejudicial from day one. So you're conceding that there's no way we can measure. Yes, you can measure it by the total in Supreme Court. I'll go to another. When you have the testimony of an expert sitting on the witness stand who testifies, he took a retainer from both sides, examined my private notes and my strategies in this case, and then went to the other side, took a retainer from the other side and sat on, sat in the courtroom and testified. And the judicial officer sits there and says, okay, go ahead and testify. He hasn't seen a Rule 26 report. None was filed. He testified as to what was his expertise and over objection after objection that I made and said, this is beyond the scope of his expertise. I know this man. I've used him. It's beyond the scope of his expertise. And the judge said, you can do it on cross-examination. What, what am I doing on cross-examination? No, the judge is the gatekeeper on expert witnesses. I understand that, but he cannot permit testimony on which there's no Rule 26 report. He shouldn't be on the stand in the first place. But I allowed that because I knew what his expertise was. When he went into medical evidence in a police expert, it's beyond the scope. Was the Rule 26 report in the district court record? No. And that's another fun part of this case. How can, how can a court allow an expert witness to sit on the witness stand when there's no 26 report in the record? It doesn't happen. Whose responsibility might that be to make sure these things are in the record? Not mine. That's the response. If you're going to object on the basis that he's testifying outside the scope of the report? Yes. You know, trial lawyers do well to think ahead and to protect their records. And this case stands out as something you would use in trial practice to illustrate failures of lawyers to protect their record. This record was protected. The internal affairs reports aren't in the record. Police reports aren't in the record. Rule 26 report isn't in the record. And then you come up and complain to the appellate court that there's some damage done by these things. And we don't know what you're talking about. Well, Your Honor, the, the, the record, the transcript is very clear that I objected each time he testified. Mr. Cope testified as to certain things. And when you, when you're unsuccessful in a trial court, you've got to protect the record, as Judge Roth indicated. You can't protect the record after the record's been made. I mean, I, I, I. You can submit to the court what the Court of Appeals can consider what you thought was relevant and should have been admitted and was not admitted. And that's your responsibility as a trial lawyer. We see this multiple times a day. I got it. Where lawyers put things in the record that judges wouldn't let them use in front of the fact finder. I, I, I think there's a lack of communication here. It's my, and it's my fault. How do I submit a document to the record in the first place? Do you know what's in the record? No. Oh, yeah. I know what's in the record because I have. Well, then you submit your affidavit. The, in other words, I should place an affidavit in the court saying they failed to make a Rule 26 report, but I know what this. I know what's in it. Such and such is in it. Oh, I don't. No, no. I didn't see this report. I have talked to this expert witness before. I know of his expertise. Counsel, but how can you say that he was testifying outside the scope of the Rule 26 report if you didn't know what the Rule 26 report said? That's not a Rule 26 report. Well, how could you make that objection then? That I thought your objection was he's testifying outside the contents of the Rule 26 report. Yes. So if there were no Rule 26 report, then you had no objection, right? Your objection, then, would be he shouldn't be on the stand in the first place because he didn't file. And you have admitted that you chose not to pursue that route. I guess you're right. I guess instead of outside the scope, I should have said that he has no expertise in this area. He didn't file his report like he should have. Right. You didn't object to that. Absolutely, I objected to his testimony is beyond the scope of his expertise. No, you objected to it as being outside the confines of the Rule 26 report. That was the specific objection you made. Yes, that is the specific objection I made. But I find it, well, I guess we're stuck with the record that's made at the district court. That's the difficulty for us is we can't recreate the record where we're bound to rule on what happened at the district court level. Well, if this court affirms, then people can put witnesses, expert witnesses on the stand. No, they can't. What's the constitutional violation that you claim occurred here? Due process. That's what this is all about. You mean in the trial? I'm talking about in connection with what happened to your clients. Oh, you mean the underlying case? Yes. The excessive force, false arrest, false imprisonment? Excessive force in what applied so tightly that her wrists were bleeding. Well, there's, and the evidence completely impeaches that claim. She herself says there was no damage and the photographs don't show any bruising or bleeding or anything. I would take issue with that. Do you have photographs showing bleeding wrists from handcuffs? Yes, they were submitted to the court. Are they in the record we evidence? They were submitted as evidence and the expert witness looked at them and he said they look pink. They don't look black and blue. You said bleeding. Well, when the pictures were taken, they weren't bleeding. But I understand that. But Teresa said she was not injured during the altercation and the photographic evidence did not really show bruising. That was Teresa's testimony. Teresa testified that the handcuffs did not bruise her? When you looked at the pictures, you couldn't really see. Here's the question that the pictures, you couldn't really see any bruising, could you? Well, no, but you can't see the pain I felt. That was her answer. No bruising on the pictures. No bleeding wrists in photographs? On the pictures, yes. Oh, I'm sorry. On the pictures, yes. But the, I'm not sure. You know, you don't, either you don't know the record or you're taking liberties with it. No, no, I'm not, no. You told us there were photographs of bleeding wrists in this. No, I said the, I said the, the, the, the, the testimony was that the, of the expert was the wrists were pink and not black and blue. That's what the, that's what the expert witness said. You told us there were photographs of bleeding wrists in this record. Well, I, I, if I did, I, I didn't mean there were photographs. I meant there were, the wrists were In the record, does Teresa testify that her wrists were bleeding? I don't know that it does. I, I, I, I. It doesn't. I, I, I don't, I didn't, I don't remember, but the, the, the testimony, and I'm trying to recollect here as I stand here, but the, the testimony of the expert says they were pink and I showed them the pictures and I said, is that pink or black and blue? And he said it's only pink. But it doesn't matter. If it's the, if the person who is asserting excessive force says that, that there was no bruising and that she was not injured, that's the end of your excessive force case. I don't think she said, you know, with all due respect, I don't, and again, I don't have in front of me, I think she said the pictures don't show. She even admitted during the, during the fingerprint process that they probably thought I was injured. Yes. Yeah. I, I, yeah. What did she say about the fingerprint process? That they put her up against the wall and her fingerprints were on the wall. Do you remember what, you remember why she was, appeared to be resisting? Yes. Why? Because she had a, a, I'm trying to, I'm trying to, it's a disease she has. Yeah. And she said she could, the testimony is consistent with her. Well, I could understand why they thought, might've thought I was resisting. Absolutely. So how, okay. Well, I don't, I don't, I don't have any quarrel with that and we didn't have any quarrel with that. If a person, a, a, a, a very excessive force case isn't supported by the facts. I, uh, I don't think the evidence that would support that ever gotten close to the courtroom, your honor. And that's what this case is. That's what this appeal is about. It would be, it would be nice if we could see your reports that you say would prove your case that aren't in the record and they're not in the record because you didn't take the steps necessary to put them there. I didn't, I couldn't get those reports, your honor. The court would not allow those into the record. When offered, the court rejected them. And you can't get something in that the court will not put a, put a, a, a, an evidence. You, you offered the record of what, for us to know what was said in those reports. Nor have you argued even without anything in the record that the reports described officer so-and-so admission that he really was too severe when he put on the handcuffs or anything like that. So we haven't, you apparently know what's in the reports, but we ha, we have no idea what's in the reports. I, I, and I fully realize that, your honor. I fully realize that. But it's your responsibility, if you want to argue it on appeal, to let us know what your position is and what supports your position. The, the, the, you have a, a, a two or three step process. One, one is discovery. And you get the discovery and once you get the discovery, you take the next step and you offer the reports that you get in the discovery into the record. And if you have a thousand pages of police reports and you bring them into the courtroom in a bound book and the judge said, Keaton, we don't want them and don't even try to put them in, then we have a, then how do I present them to you? You know, law clerks in the audience better be able to answer that question. Next time, make your record. I thought I had, your honor. I thought, I thought it was very clear in the record. You don't even tell us in the briefs what's so exciting about these documents that we ought to send it, send it back for a new trial. You just complained, well, they didn't let, they didn't let the reports in. You don't even tell us what's in the report that's so exciting that you should win or be able to get past where you got in this case. I, I would think it would be improper to put in a brief to this court something, factual evidence that's not in the record. I, I, that, that, I think that would be improper. I, I, maybe I'm wrong. Maybe I've learned something today. You don't even care, well, never mind. You know, you don't get it. I, and that's, that's very possible. I, you know. Appellate courts are trial courts. I understand that. And I, and that is, that is exactly right. Appellate courts review the trial record. And if we can't review it, and it's your responsibility to put it in, before us, don't expect a win. I have put before this court evidence that the trial, we, an amended complaint, and the court denied it, and they violated, and they did not comply with the, with, with due process and fulminant. Yeah, and you haven't been able to show us how that would make a difference, and why we ought to send it back to start over again. You just want to recharacterize facts in a legal way. Your Honor, with all due respect, if the court, if the court gives a reason, then the issue of futility comes into play. If the court does not give any reason whatsoever, futility and undue delay and all the other factors never enter into the equation. That's not what the cases say. Never mind. Well, okay. Thank you, counsel. Okay. Good morning, Your Honors. Jeffrey Held, Law Offices of Alan Wasatsky for the defendants. May it please the court. In the case of Henderson v. City of Simi Valley, this court decided that if a district judge heard the evidence and found that the evidence was, quote, If ever there was a Henderson v. City of Simi Valley case, this is it. And the case facts are almost remarkably analogous also to the Ninth Circuit decision in Jackson v. City of Bremerton. With that, I would submit, unless the court has any inquiries. Why did the district court deny the motion for leave to amend? There is no stated rationale. There is no stated rationale. Did you oppose that? Our office did. On what ground? We opposed it on the ground that it was belatedly offered, that the plaintiff's counsel substituted in on September 29, 2004. He chose to do discovery on the complaint as originally pled. He took six depositions, and he allowed the September 30, 2004 deadline to add parties or amend pleadings to pass. And then two months later, on November 29, 2004, he then made his first action to amend the complaint, which was offering an ex parte application for an order shortening time. So the elapse of time, that would be supported by the Ninth Circuit decisions in Morongo v. Rose and Solomon v. North American Life. By then, the case had been discovered on the complaint as originally pled, and there was no proffer by plaintiff's counsel that he met, you know, why the delay? There's no statement in this record or below that he met with his clients, or there was something preventing him from meeting with his clients to find out whether the complaint as pled by his predecessor counsel was in some way inaccurate or incomplete. The district court, however, gave no reason for denying the motion at all. Did the other side ask for the court to give a reason and explain? No. No to both questions, Your Honor. The court did not give a reason, and plaintiffs, or I'm sorry, I should say appellants' counsel did not request a reason. Thank you. Is there anything further, Your Honor? It appears not. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Trott, Roth, Rawlinson